IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                         No. 18-po-4579 RB-GJF

**JENIFER MILADIS ALVARADO-DIAZ,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Jenifer Miladis Alvarado-Diaz appeals her judgment and conviction imposed by United States Magistrate Judge Gregory J. Fouratt on January 18, 2019, and entered on January 28, 2019. (Docs. 14; 16.) Defendant was found guilty of illegal entry without inspection in violation of 8 U.S.C. § 1325(a)(1). (Doc. 14.) On appeal, Defendant asserts that the Government failed to prove that she actually "entered" the United States for two reasons. First, because the Magistrate Judge incorrectly applied the law regarding the doctrine of official restraint and Defendant was "never free to go at large within the United States." (Doc. 24 at 6, 17–18.) Second, because she did not "actually and intentionally evade[] inspection." (*Id.* at 18.) Accordingly, Defendant argues that since she never actually "entered" the United States and entry is a required element of a § 1325(a) violation, her conviction should be overturned.[1] (*Id.*)

This Court previously declined to adopt the Ninth Circuit's doctrine of surveillance as official restraint in the criminal context. *See United States v. Gaspar-Miguel*, 362 F. Supp. 3d 1104, 1107 (D.N.M. 2019), *appeal docketed*, No. 19-2020 (10th Cir. Feb. 5, 2019). The Court

---

[1] Defendant was convicted only of entry without inspection in violation of § 1325(a), and Judge Fouratt did not discuss the merits of her case under an attempt theory. Thus, though it is addressed in Defendant's brief, the sufficiency of the evidence for an attempt conviction is not properly before the Court in this appeal. (*See* Doc. 24 at 20–22.)

declines to reconsider the issue here. Further, the Court agrees with United States District Judge Kenneth Gonzales's recent and well-reasoned conclusion in *United States v. Montes-Guzman* that defining "entry" to include "actual and intentional evasion of inspection" would "impermissibly collapse[] § 1325(a)(1) with § 1325(a)(2) . . . [and] render § 1325(a)(2) entirely superfluous . . . ." No. 18-PO-4491 KG/SMV, 2019 WL 2211090, at *6 (D.N.M. May 22, 2019). Thus, the judgment of the United States Magistrate Judge finding Defendant guilty of entry without inspection in violation of 8 U.S.C. § 1325(a)(1) is **affirmed**.

I.  **Background**[2]

Defendant is a citizen of El Salvador. (Doc. 23 at 69:2–3.) Around 12:05 p.m. on December 29, 2018, United States Border Patrol Agent Ernesto Campos was conducting line watch duties approximately half a mile from the end of the international boundary fence near Sunland Park, New Mexico. (*See id.* at 15:10–13, 16:22–17:2.) Agent Campos saw two individuals, including Defendant, approaching him. (*See id.* at 17:2–6.) Agent Campos testified that he did not see them on the Mexican side of the border because he could not see through the border fence from where he was parked, but noticed them when he looked in their direction "and saw them running toward" him. (*See id.* at 23:18–25.) When the individuals reached Agent Campos, he identified himself and Defendant admitted that she was a citizen of El Salvador and had crossed the border without documentation to enter or remain in the United States. (*See id.* at 24:5–24.)

Defendant testified that she left El Salvador because she was being threatened by gangs in her hometown and came to the United States to seek asylum. (*See id.* at 69:24–70:12, 71:22–24.) She hoped that, after several years living in the United States, it would be safe for her to return to

---

[2] The Court recites only that factual and procedural background necessary to resolve this appeal. "The record consists of the original papers and exhibits in the case; any transcript, tape, or other recording of the proceedings; and a certified copy of the docket entries." Fed. R. Crim. P. 58(g)(2)(b).

2

El Salvador. (*See id.* at 70:12–20.) Defendant stated that her goal was to be "turned over to Immigration, not to just simply cross [] into the United States, but to see if [she] could ask for asylum." (*Id.* at 71:16–19.) She testified that the woman she hired to help her reach the United States suggested she try to cross at night and evade Border Patrol Agents, but the Defendant told her "no, that's not what I wanted to do, I wanted to surrender myself for asylum, and so . . . we stayed in Juarez in a hotel and we did not cross that night, not until the next day." (*Id.* at 72:21–24.) The next day, the woman took her to the end of the fence near Sunland Park and directed her to approach Agent Campos's vehicle. (*Id.* at 73:4–23.)

At the close of trial, Judge Fouratt made a finding of fact that Agent Campos's "surveillance, awareness, [and] visibility of the two people on foot began after they had crossed into the United States." (*Id.* at 114:21–23.) Judge Fouratt also found that Defendant "was free to at least try to mill about the country" and that "her entry[,] governed only by general intent[,] was completed at the time that she crossed the border . . . and her purpose for doing so, although understandable, is not relevant." (*Id.* at 116:5–8.) Judge Fouratt concluded that "[w]hen a defendant chooses to knowingly and voluntarily cross the border at a place that she decides, and not one that the immigration authorities decide, the general intent crime of entry is completed . . . so long as her action in crossing the border was a volitional act." (*Id.* at 116:18–23.) He found Defendant guilty of entry without inspection, and this appeal ensued. (*See id.* at 117:13.)

## II. Standard of Review

The Court has jurisdiction in this matter under 18 U.S.C. § 3402: "In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." However, "[t]he defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the

same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The Court will review "the legal conclusions de novo and factual findings for clear error." *United States v. Morrison*, 415 F.3d 1180, 1184 (10th Cir. 2005). The Court must "review the record for sufficiency of the evidence . . . to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt . . . ." *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012) (citations omitted).

## III. Discussion

### A. Official Restraint

One week after Defendant's bench trial, this Court affirmed a similar conviction and held that "freedom from official restraint is a required element of 'entry' in the immigration context, but that continuous surveillance by law enforcement does not qualify as 'official restraint' for purposes of 8 U.S.C. § 1325(a)." *Gaspar-Miguel*, 362 F. Supp. 3d at 1121. The Court thoroughly analyzed the history and evolution of the doctrine of official restraint in the immigration context and incorporates by reference here the Memorandum Opinion and Order in *United States v. Gaspar-Miguel*. *See id.* Of particular note, the Court reasoned that "the Tenth Circuit has never explicitly adopted or rejected the concept of surveillance as constructive official restraint[,]" but "the Court finds it likely that, given the Fifth Circuit's well-articulated concerns about the concept of surveillance as official restraint and the Ninth Circuit's unique position applying the doctrine in criminal cases, the Tenth Circuit will decline to adopt the concept of surveillance as constructive restraint." *Id.* at 1119.

Defendant urges the Court, "[w]ith all due respect," to essentially reconsider its decision in *Gaspar-Miguel* by reevaluating the same caselaw and legal arguments that it carefully considered in that case. (*See* Doc. 24 at 7.) The Court declines to do so. Thus, even if Agent

4

Campos had continuously surveilled Defendant from *before* she crossed the border until the time she was detained, such surveillance would not negate her "entry" into the United States. Further, Judge Fouratt's finding that Agent Campos's "surveillance, awareness, [and] visibility" of Defendant "began *after* [she] had crossed into the United States" was based on a reasoned credibility assessment of conflicting testimony from Agent Campos and Defendant. (*Id.* at 114:21–23 (emphasis added), 113:25–115:14.) The Court finds no clear error in that factual finding, and thus Defendant was not under constructive restraint even if the Tenth Circuit had adopted that doctrine in the criminal context. *See Morrison*, 415 F.3d at 1184.

Judge Fouratt also rejected Defendant's argument that, surveillance aside, she was never truly free from official restraint because as soon as Agent Campos saw her she was unable to move freely throughout the country and was "as good as caught." (*See id.* at 111:11–19.). The Judge explained: "I am finding that she had a range of choices, she could have gone in any direction and for reasons that we all understand she chose to turn in the direction of a Border Patrol vehicle . . . seeking the relief about which she testified." (*Id.* at 115:17–23.) Thus, he went on to find, Defendant "was free to at least try to mill about the country . . . ." (*Id.* at 115:23–116:2.) Based on the record, the Court concludes that this finding was reasonable and was not a clear error. *See Morrison*, 415 F.3d at 1184.

On appeal, Defendant argues that "the question upon which official restraint hinges, however, is not whether she was free to *try* to go about and mix with the population . . . but whether she was actually free to do so." (Doc. 24 at 17 (emphasis added).) The cases upon which Defendant relies, however, are cases in which courts held surveillance to equate to official restraint, but also held that gaps in surveillance did not defeat such restraint if the individuals were not capable of avoiding capture and moving freely throughout the United States. (*See id.* (citing *Yang v. Maugans*,

5

68 F.3d 1540, 1550 (3d Cir. 1995); *United States v. Vazquez-Hernandez*, 849 F.3d 1219, 1228 (9th Cir. 2017); *United States v. Gonzalez-Torres*, 309 F.3d 594 (9th Cir. 2002). Though the Court has held that freedom from official restraint remains a required element of "entry" in the immigration context, *see Gaspar-Miguel*, 362 F. Supp. 3d at 1121, Defendant was free from official restraint in this case and clearly entered the United States.

### B. Actual and Intentional Evasion of Inspection

Next, the Court rejects Defendant's argument that "inspection and admission by an immigration officer or actual and intentional evasion of inspection" is a required and "well-established" element of "entry" for immigration purposes. (*See* Doc. 24 at 18.) Section 1325(a) criminalizes:

> Any alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) attempts to enter or obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact . . . .

8 U.S.C. § 1325(a). Defendant would add to this statutory definition the definition of "entry" first articulated by the Board of Immigration Appeals in a civil case: "inspection and admission by an immigration officer or actual and intentional evasion of inspection . . . ." (Doc. 24 at 18 (citing *In re Pierre*, 14 I. & N. Dec. 467 (BIA 1973)).)

Judge Gonzales carefully considered this issue in *Montes-Guzman* and held that applying such a definition of entry to § 1325 and §1326 cases would improperly "render § 1325(a)(2) entirely superfluous, as 'actual and intentional evasion of inspection' would already be an element of 'enter[ing] or attempt[ing] to enter the United States' for purposes of § 1325(a)(1)." *See* 2019 WL 2211090, at *6. As Judge Gonzales explained:

> Section 1325(a) provides three ways in which an alien may commit illegal entry or attempted entry: he or she may enter the United States other than at a port of entry

6

> during designated hours; he or she may elude or evade, or attempt to do so, inspection by immigration officers at a port of entry; or he or she may present false documents or information to immigration officers at a port of entry. The three options are mutually exclusive. This Court declines to read the statute in a manner that renders one of three disjunctive subsections redundant.

*Id.* The Court agrees. To show that an individual "entered" the United States for purposes of sections 1325 and 1326, the Government need not prove that the individual actually and intentionally evaded inspection. Thus, the Magistrate Judge's conclusion that Defendant entered the United States was not in error. (*See* Doc. 23 at 116:18–117:4.)

The Court concludes that there was sufficient evidence in the record to find that Defendant (1) is not a citizen of the United States; and (2) entered the United States at a place other than a designated port of entry. Her conviction for entry without inspection in violation of 8 U.S.C. § 1325(a)(1) is **AFFIRMED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**